1

2

3

4                            UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
5                                      AT SEATTLE

6    ROBERT C. WILLIS,

7                    Plaintiff,
                                                      No. C06-648P
8         v.
                                                      ORDER ON DEFENDANT'S
9    WAL-MART STORES, INC.,                           MOTION FOR SUMMARY
                                                      JUDGMENT
10                   Defendant.

11

12

13        This matter comes before the Court on Defendant's motion for summary judgment.  (Dkt. No.

14   16).  Having considered the materials submitted by the parties, and finding that oral argument is not

15   necessary to decide this matter, the Court DENIES Defendant's motion for the reasons stated below.

16                                    **Background**

17        Plaintiff Robert Willis was born in Austria and lived in that country until the age of 15.

18   Plaintiff is now a permanent resident alien of the United States.  Plaintiff's mother is Austrian and his

19   father is African-American, and Plaintiff identifies with the Black or African racial group.

20        Plaintiff started working at a Wal-Mart store in Renton in May 2003.  In December 2003, he

21   was promoted to a position as Tire Lube Express (TLE) service manager, where his supervisor was

22   Chris Rinard.  Plaintiff states that he received positive performance reviews in 2003 and 2004.

23        In June 2004, Mr. Rinard was transferred and Timothy Bean became the store's TLE Manager

24   and Plaintiff's immediate supervisor.  Plaintiff testifies that Mr. Bean repeatedly made derogatory or

25   mocking comments to Plaintiff regarding his national origin, such as calling Plaintiff a "stinking

ORDER - 1

Austrian" and a "damn Austrian," speaking to Plaintiff in an imitation of Arnold Schwarzenegger's voice, and making remarks about calling the INS to have Plaintiff deported.   Plaintiff also complains that Mr. Bean made disparaging comments in his presence regarding African-Americans and that Mr. Bean was demeaning and rude to non-white customers or those with limited English skills.  Plaintiff has offered several declarations from other Wal-Mart employees and a Wal-Mart customer that complain of Mr. Bean's treatment of Plaintiff and other Black employees.

Plaintiff testifies that he complained about Mr. Bean's conduct to Wal-Mart officials, including but not limited to Mr. Bean's comments about his national origin.  Plaintiff states that after he made such complaints, Mr. Bean stripped him of tasks and made it difficult for him to do his job.  Plaintiff has submitted a letter that he wrote to Wal-Mart on August 15, 2004, which expressed concerns that he was experiencing retaliation for complaints about the "Austrian" comments.  Plaintiff also states that he met with store manager Jeremy Smith in August 2004 to complain that he was being undermined by Mr. Bean and that Mr. Bean mistreated non-white customers.

Plaintiff testifies that on August 24, 2004, the day after he met with Mr. Smith, Mr. Bean gave Plaintiff a verbal warning about being late going to his lunch break.  On August 25, 2004, Mr. Bean gave Plaintiff a second written "coaching" about being late going to lunch.  The verbal warning and written coaching represented the first two steps in Wal-Mart's progressive disciplinary policy. According to Plaintiff, he had never received such warnings before.  Plaintiff testifies that after these warnings, Mr. Bean continued to make "Austrian" comments and that such comments became a "constant" part of his work.

On February 28, 2005, Plaintiff was subject to Wal-Mart's third level of discipline, which the company refers to as a "Decison-Making Day" or "D-Day."  It appears that the "D-Day" was originally based on Plaintiff's alleged failure to keep the TLE shop up to standards, but was later changed to focus on excessive unexcused absences, tardies, and "leave earlies."  On March 1, 2005, following his "D-Day," Plaintiff called Wal-Mart's "ethics hotline" to make additional complaints

about Mr. Bean's conduct.  Plaintiff also submitted a letter to Wal-Mart management on March 1st that indicated, among other things, that he had been "subjected to ethnic ridicule."  Although Wal-Mart officials initially told Plaintiff at the February 28th "D-Day" that he would be demoted, Plaintiff was later told on March 2, 2005 that he would be able to continue in his position as TLE service manager.

On April 23, 2005, however, Plaintiff states that he met with store manager Jeremy Smith and was told that he would either be terminated or demoted because he had left tires outside the store the previous evening.  According to Plaintiff, Mr. Bean had provided Mr. Smith with a videotape showing that the tires had been left outdoors.  Plaintiff states that he told Mr. Smith that he would not voluntarily take a demotion and that Wal-Mart would have to fire him.  Soon after this meeting, Plaintiff received a letter from his physician indicating that he needed a different work environment due to work-induced stress from his immediate supervisor.  On May 10, 2005, Plaintiff presented this letter to Mr. Smith and told Mr. Smith that he would "go ahead and resign." Plaintiff's exit paperwork indicates that his reason for leaving Wal-Mart was "Bobby's health/stress will no longer allow him to work here."

**Analysis**

Plaintiff has brought federal and state-law claims against Wal-Mart for hostile work environment, retaliation, and disparate treatment.  Plaintiff brings his federal claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, while his state-law claims are brought under the Washington Law Against Discrimination, RCW 49.60.  Defendant has moved for summary judgment on all claims.  In analyzing Defendant's motion, the Court views the evidence in the light most favorable to Plaintiff.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

1.   <u>Hostile Work Environment Claims</u>

Plaintiff alleges that he was subjected to a hostile work environment based on his race or national origin.  To make out such a claim under federal law, plaintiff must show: (1) that he was subject to verbal or physical conduct based on his race or national origin; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment.  <u>Galdamez v. Potter</u>, 415 F.3d 1015, 1023 (9th Cir. 2005).  To satisfy the third element of this test, Plaintiff must show that his work environment was both subjectively and objectively hostile.  <u>Id.</u>  "In making the objective determination, we look to all the circumstances, including the frequency, severity, and nature (*i.e.*, physically threatening or humiliating as opposed to merely verbally offensive) of the conduct."  <u>Id.</u>  "The required severity of the conduct varies inversely with its pervasiveness and frequency" and objective hostility must be considered from the perspective of a reasonable person belonging to Plaintiff's racial or ethnic group.  <u>Id.</u>  Washington law is similar.  <u>See</u> <u>Glasgow v. Tacoma Sch. Dist. No. 10</u>, 53 Wn. App. 591, 595-96 (1989).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has offered sufficient evidence to create a genuine issue of material fact on his hostile work environment claims.  Plaintiff has offered evidence that he was subjected to verbal conduct in the workplace based on his national origin or race and that this conduct was unwelcome.  There is also evidence from which a reasonable fact-finder could determine that the conduct was sufficiently pervasive to alter the conditions of employment and create an abusive work environment.  Therefore, the Court denies Defendant's request for summary judgment on the hostile work environment claims.[1]

---

[1]  Although Defendant focuses on the fact that some of Plaintiff's complaints relate to conduct directed at co-workers and customers, it should be noted that courts have held that incidents "directed at others and not the plaintiff . . . do have some relevance in demonstrating the existence of a hostile work environment."  <u>Gleason v. Mesirow Financial, Inc.</u>, 118 F.3d 1134, 1144 (7th Cir. 1997).

2.      Retaliation Claims

Plaintiff also alleges that he was subject to retaliation for opposing and reporting wrongful conduct.  To make out a prima facie retaliation claim under Title VII, plaintiff must offer evidence sufficient to show that (1) he engaged in a protected activity; (2) he suffered an adverse employment action, and (3) there was a causal link between his activity and the employment action.  Raad v. Fairbanks North Star Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir. 2003).  Washington courts apply similar requirements.  See Hudon v. West Valley Sch. Dist. No. 208, 123 Wn. App. 116, 130 (2004).  An "adverse" employment action is one that might have dissuaded a reasonable worker from making or supporting a charge of discrimination, but not does include "petty slights, minor annoyances, and simple lack of good manners."  Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct. 2405, 2415 (2006); see also Ray v. Henderson, 217 F.3d 1234, 1241 (9th Cir. 2000) (adverse employment actions may include transfer of job duties and undeserved performance ratings, but does not include "mere ostracism" by co-workers).

Here, Plaintiff has offered evidence that he engaged in protected activity, including: (1) his complaints in the summer of 2004 to Wal-Mart management about Mr. Bean's derogatory "Austrian" and "INS" comments; and (2) his call to the Wal-Mart ethics hotline and his letter to Wal-Mart management on March 1, 2005 complaining that he had been subject to "ethnic ridicule."  Plaintiff has also presented evidence that shortly after he engaged in protected activity, he suffered adverse employment actions, such receiving back-to-back warnings for alleged meal-break violations on August 24 and 25, 2004, and being told on April 23, 2005 that he would be demoted or terminated. Proximity between the protected activity and the adverse employment actions may support a causal link between the protected activity and the employment action.  See, e.g., Ray, 217 F.3d at 1244 ("That an employer's actions were caused by an employee's engagement in protected activities may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.'").

1    While Wal-Mart has offered legitimate, non-discriminatory reasons for the adverse disciplinary

2    actions, the Court finds that Plaintiff has provided sufficient evidence to support an inference that

3    Defendant's reasons are pretextual.  Prior to making his complaints in the summer of 2004, it appears

4    that Plaintiff had not received any disciplinary warnings.  In addition, Plaintiff has offered evidence

5    suggesting that supervisors have a significant measure of discretion and flexibility in applying Wal-

6    Mart disciplinary policies and that others who committed similar violations were not subject to

7    discipline.  Under these circumstances, a reasonable fact-finder could determine that Wal-Mart's stated

8    reasons for the adverse actions were pretextual.

9        Therefore, the Court denies Defendant's request for summary judgment on Plaintiff's

10    retaliation claims.

11    3.    Disparate Treatment Claims

12        Finally, Plaintiff has brought claims under federal and state law for disparate treatment in the

13    terms or conditions of his employment.  "In responding to a summary judgment motion in a Title VII

14    disparate treatment case, a plaintiff may produce direct or circumstantial evidence demonstrating that a

15    discriminatory reason more likely than not motivated the defendant's decision, or alternatively may

16    establish a prima face case under the burden-shifting framework set forth in McDonnell Douglas Corp.

17    v. Green . . . ."  Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1037 (9th Cir. 2005).

18    Washington law is similar.  See, e.g., Grimwood v. Univ. of Puget Sound, 110 Wn.2d 355, 363 (1988)

19    (noting that the McDonnell Douglas framework is not the exclusive method for proving a claim of

20    discrimination).  Here, Plaintiff appears to rely on direct or circumstantial evidence to respond to

21    Defendant's motion, rather than the McDonnell Douglas framework.

22        The Court finds that Plaintiff has offered sufficient evidence to avoid summary judgment on his

23    disparate treatment claims based on his national origin and race.  Among other things, Plaintiff testifies

24    that his supervisor Timothy Bean referred to him as a "stinking Austrian" and a "damn Austrian."

25    Such statements constitute direct evidence of discriminatory animus, at least with respect to Plaintiff's

ORDER - 6

1   claims for discrimination based on his national origin.  See, e.g., Dominguez-Curry, 424 F.3d at 1039

2   (noting that Ninth Circuit has "repeatedly held that a single discriminatory comment by a plaintiff's

3   supervisor or decisionmaker is sufficient to preclude summary judgment for the employer"); Cordova

4   v. State Farm Ins. Cos., 124 F.3d 1145, 1149 (9th Cir. 1997) (decisionmaker's comment that another

5   employee was a "dumb Mexican" constituted direct evidence of discriminatory animus).  In addition,

6   Plaintiff has offered declarations from himself and from other Wal-Mart employees indicating that Mr.

7   Bean treated Plaintiff and other Black employees less favorably than similarly-situated Caucasian

8   employees.  Although Defendant has offered legitimate, non-discriminatory reasons for adverse

9   employment actions taken against Plaintiff, the Court finds that Plaintiff has offered sufficient direct

10  and circumstantial evidence to support an inference that these reasons are pretextual.

11          Therefore, the Court denies Defendant's request for summary judgment on Plaintiff's disparate

12  treatment claims.

13                                              **Conclusion**

14          Plaintiff has offered sufficient evidence to create genuine issues of material fact on his claims

15  for hostile work environment, retaliation, and disparate treatment under federal and state law.

16  Therefore, the Court DENIES Defendant's motion for summary judgment on these claims.

17          The Clerk is directed to send copies of this order to all counsel of record.

18          Dated:   June 14, 2007.

19

20                                                  s/Marsha J. Pechman
                                                    Marsha J. Pechman
21                                                  United States District Judge

22

23

24

25

ORDER - 7